UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Cornelius Patterson, Jr.,                                             Case No.  3:21-cv-2210

                        Plaintiff,

        v.                                                            MEMORANDUM OPINION
                                                                           AND ORDER

Thomas King, *et al.*,

                        Defendants.


## I.  INTRODUCTION

On November 19, 2021, Plaintiff Cornelius Patterson, Jr., an inmate at the Marion

Correctional Institution in Marion, Ohio ("MCI") who is proceeding *pro se*, filed suit against a

collection of individuals employed by the Ohio Department of Rehabilitation and Correction

("ODRC").  In this action, Patterson asserts claims under 42 U.S.C. § 1983, alleging Defendants

have violated his constitutional rights by failing to train employees, denying access to the courts, and

retaliating against him.  (Doc. Nos. 1 and 5).

Acting as an Interested Party, the State of Ohio – on behalf of Defendants Annette

Chambers-Smith (the Director of ODRC), Beth Oehler (the principal at MCI), Thomas King (MCI's

institutional librarian), Leon Hill (the Warden at MCI), Kasey Plank (MCI's institutional inspector),

and Kelley Riehle (ODRC's Assistant Chief Inspector) – filed a motion to dismiss Patterson's

claims.  (Doc. No. 7).  Patterson filed a brief in opposition to the motion, (Doc. No. 11), and the

State filed a brief in reply.  (Doc. No. 13).  Patterson also has filed two requests to take judicial

notice, a motion for leave to file a sur-reply brief, a proposed sur-reply, and a motion for leave to amend his complaint for a second time.  (Doc. Nos. 12, 14, 15, 16, and 17).  For the reasons stated below, I deny Patterson's motion to amend his complaint, grant his motion for leave to file a sur-reply, and grant the State's motion to dismiss.

## II.    BACKGROUND

Patterson alleges that, on May 3, 2021, he submitted a request for a law library pass to King, the institutional librarian at MCI.  (Doc. No. 12-1 at 1).[1]  King allegedly informed Patterson he would receive a pass but did not actually issue one.  (*Id.*).  Twelve days later, on May 15, 2021, Patterson again requested a law library pass.  Patterson alleges King first told Patterson he could not issue the pass as quickly as Patterson had requested.  King subsequently issued a pass to Patterson two days later, after Patterson's third request.  (*Id.* at 2-3).  Patterson asserts this left him with 10 days to prepare and mail his notice of appeal of a decision issued by the Ohio Third District Court of Appeals and that his appeal was denied as untimely because it was one day late.  (*Id.* at 3).

Patterson filed a grievance regarding the delay in the issuance of the pass.  Oehler, the principal at MCI, denied the grievance, noting that law library passes typically were issued two weeks after an inmate requested them and that, while Patterson initially was left off the pass list for the week of May 17, King corrected the mistake by issuing Patterson handwritten passes for May 17 through May 20.  (*Id.* at 4).  Patterson then appealed Oehler's resolution of his grievance to Plank, MCI's institutional inspector.  Plank denied the appeal, noting Patterson's initial omission was the result of a mistake, and that King rectified the mistake as soon as Patterson pointed it out.  (*Id.* at 5).

---

[1]  Patterson's initial and supplemental complaints contain very few factual allegations, and many of the allegations are in fact legal conclusions.  (*See* Doc. Nos. 1 and 5).  I conclude the only way his claims may receive a fair review is if I review his proposed amended complaint, as that proposed pleading contains a much clearer picture of the events underlying his claims.  (*See* Doc. No. 12-1).  I ultimately conclude Patterson fails to state a plausible claim for relief even if I take as true the factual allegations in the proposed amended complaint and, therefore, I deny his motion for leave to amend as futile.

Patterson again appealed the decision, this time to Riehle, the Assistant Chief Inspector.  Riehle also denied Patterson's appeal.  (*Id.* at 7-8.)

Patterson contends King's failure to issue him a law library pass when he first requested it resulted in a violation of his right to access the courts.  He also asserts Oehler, Plank, and Riehle violated his rights when they denied his grievance and subsequent appeals regarding King's conduct. Patterson further contends Chambers-Smith, ODRC's Director, is responsible for these alleged violations because she allegedly failed to ensure the other Defendants were properly trained.

Aside from his allegations related to the law library, Patterson also alleges that mail room staff members at MCI have been opening mail from a private investigator Patterson has employed, as well as withholding or discarding pictures and videos Patterson's family members have sent to him electronically.  (*Id.* at 9).  He claims this is occurring because Hill "is ordering/allowing his employees to retaliate against the Plaintiff for exercising his right to the grievance process and for filing his claim with this court."  (*Id.* at 8).  He also claims Chambers-Smith failed to properly train Hill, MCI's warden, regarding these matters.  (*Id.* at 10).

### III.  STANDARD

A defendant may seek to dismiss a plaintiff's complaint on the ground the complaint fails to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  When ruling on a motion to dismiss, a court construes the complaint in the light most favorable to the plaintiff and accepts as true well-pleaded factual allegations.  *Daily Servs., LLC v. Valentino*, 756 F.3d 893, 896 (6th Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).  Factual allegations must be sufficient to state a plausible claim for relief.  *Iqbal*, 556 U.S. at 678.  Legal conclusions and unwarranted factual inferences are not entitled to a presumption of truth.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case[,] and exhibits attached to defendant's motion to dismiss so

long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

Rule 15 provides a party may amend its pleadings once as a matter of course within 21 days of serving the pleading or, if a responsive pleading is required, 21 days after service of a responsive pleading. Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Head v. Jellico Hous. Auth.*, 870 F.2d 1117, 1123 (6th Cir. 1989). "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Inc. Co.*, 203 F.3d 417, 420 (6th Cir. 2000).

## IV. ANALYSIS

### A. MOTION FOR LEAVE TO FILE SUR-REPLY

Patterson has filed a motion for an extension of time to file a response to the State's reply brief in support of its motion to dismiss, as well as his response to the reply brief. (Doc. Nos. 15 and 16). A court may grant leave to file a sur-reply brief if the party seeking to file the sur-reply brief has shown there is good cause to support that additional filing, such as the need to address an issue that was raised for the first time in a reply brief. *See, e.g., Key v. Shelby Cnty.*, 551 F. App'x 262, 264-65 (6th Cir. 2014); *Geiger v. Pfizer, Inc.*, 271 F.R.D. 577, 580-81 (S.D. Ohio 2010).

As Patterson points out, the State argued, for the first time in its reply brief, that some of Patterson's claims should be dismissed because he failed to properly serve some of the Defendants.

4

(*See* Doc. No. 13 at 1-2).  I construe Patterson's motion for an extension as a motion for leave to file a sur-reply and grant the motion.  (Doc. No. 15).

### B.  SERVICE

In the reply brief, the State argues Patterson's claims should be dismissed pursuant to Rule 4(m) for failure to timely serve Chambers-Smith, King, Oehler, and Reihle with the complaint as required by Rule 4.  (Doc. No. 13 at 1-2).  The State does not indicate the basis for this argument, and the record does not support it.  (*See* Doc. No. 8) (indicating each summons was delivered and signed for).  Moreover, the State fails to acknowledge Patterson has been authorized to proceed *in forma pauperis* under 28 U.S.C. § 1915.  (Doc. No. 4).

Because Patterson is proceeding *in forma pauperis*, service in this case is governed by Federal Rule of Civil Procedure 4(c)(3) and 28 U.S.C § 1915(d), which "[t]ogether, … stand for the proposition that[,] when a plaintiff is proceeding in forma pauperis[,] the court is obligated to issue plaintiff's process to a United States Marshal who must in turn effectuate service upon the defendants, thereby relieving a plaintiff of the burden to serve process once reasonable steps have been taken to identify for the court the defendants named in the complaint."  *Byrd v. Stone*, 94 F.3d 217, 219 (6th Cir. 1996).[2]

Patterson timely filed his motion to proceed *in forma pauperis* on the same day that he filed his Complaint – November 19, 2021.  (Doc. No. 1).  The motion was granted on February 17, 2022.  (Doc. No. 4).  At that point, it was no longer Patterson's burden to perfect service.  Because I conclude "good cause" exists for any delay in service, dismissal pursuant to Rule 4(m) would be

---

[2]  At the time *Byrd* was decided, the operative Rule was Rule 4(c)(2) and the operative statute was 28 U.S.C. § 1915(c). Both Rule 4 and 28 U.S.C. § 1915 were subsequently amended.  While the language remained the same as that interpreted by *Byrd*, Rule 4(c)(2) became Rule 4(c)(3), and § 1915(c) became § 1915(d).

improper and, to the extent the State's belated attempt to raise the issue may be deemed proper, I deny the State's motion on this basis.

### C.    ACCESS TO COURTS

Section 1983 provides a vehicle for a plaintiff to allege that a person acting under color of state law violated "a right secured by the Constitution and laws of the United States." *West v. Atkins*, 487 U.S. 42, 48 (1988).  While inmates have a right of access to the courts which may be vindicated under § 1983, they must show they were prejudiced by a defendant's alleged actions.  *See, e.g., Lewis v. Casey*, 518 U.S. 343, 349-51 (1996) (noting inmates must show "actual injury" to the right to access the courts); *Christopher v. Harbury*, 536 U.S. 403, 413-14 (2002) (plaintiff may seek relief for action of defendant which resulted in a lost opportunity to pursue a legal claim).

The Constitution requires that prisons provide inmates with "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Lewis*, 518 U.S. at 351 (citation and internal quotation marks omitted).  "In order to state such a claim, the plaintiff must 'present evidence that the [d]efendants' actions actually rendered a state court remedy ineffective.'" *Boone v. Spurgess*, 385 F.3d 923, 931 (6th Cir. 2004) (quoting *Swekel v. City of River Rouge,* 119 F.3d 1259, 1260 (6th Cir. 1997)) (alteration in *Boone*).

Patterson has not made this required showing.  In his original complaint, he alleged King denied him access to the prison law library, which "prevented [him] from perfecting and garnering [his] appeal to [t]he Supreme Court of Ohio."  (Doc. No. 1 at 13).  In his proposed amended complaint, he further asserts that King's alleged actions led to the Supreme Court of Ohio denying his appeal because it was one day late.  (Doc. No. 12-1 at 3).

But these statements are untrue.  The docket of Patterson's appeal before the Supreme Court of Ohio shows Patterson was granted leave to file a delayed appeal because the institution had restricted access to the law library due to Covid-19 protocols.  (*See State of Ohio v. Patterson*, Case No.

2021-0815, Order dated July 9, 2021).  The Supreme Court of Ohio subsequently declined to accept jurisdiction of Patterson's appeal, but Patterson has not made any showing that it did so because of an untimely notice of appeal.  *See State v. Patterson*, 164 Ohio St. 3d 1460 (2021).

I conclude Patterson fails to show he suffered actual injury from the Defendants' alleged actions and, therefore, he has not stated a plausible claim for denial of his right to access to the courts.  *Lewis*, 518 U.S. at 349-51.

### D.  RETALIATION

To establish a First Amendment retaliation claim, Patterson must show: "(1) he engaged in protected conduct, (2) the defendant took an adverse action that is capable of deterring a person of 'ordinary firmness from continuing to engage in that conduct,' and (3) 'the adverse action was motivated at least in part by the [prisoner's] protected conduct.'"  *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (quoting *Thaddeus–X v. Blatter,* 175 F.3d 378, 394, 398 (6th Cir. 1999) (en banc)) (alteration in *Hill*).  In some circumstances, circumstantial evidence, including the timing of events, may be sufficient to plead a causal connection between protected conduct and an adverse action.  *See Thaddeus-X*, 175 F.3d at 399.

While Patterson alleges Hill permitted and ordered unnamed staff members to retaliate against him for filing grievances, he offers only "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars."  *Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (citation and internal quotation marks omitted).  He alleges only that "Hill is ordering/allowing his employees to retaliate against the Plaintiff for exercising his right to the grievance process and for filing his claim with this court."  (Doc. No. 12-1 at 17).  He does not offer any allegations about when Hill made this alleged order or plead any facts which might support his claim that Hill harbored some retaliatory animus toward him.

Moreover, the allegedly wrongful conduct Patterson asserts occurred after he filed a grievance about King's conduct was not in fact wrongful, as Patterson himself shows. Patterson complains MCI did not treat mail from his private investigator as legal mail and that this was done in retaliation for filing the grievance. (*Id.* at 9). But, according to Patterson, the Ohio Administrative Code defines legal mail as "mail addressed to an inmate clearly bearing the return address of an attorney-at-law, a public service law office[,] a law school legal clinic[,] court of law[,] or the correctional institution inspection committee." (*Id.* (citing Ohio Admin. Code 5120-9-17(B)(2))). Patterson does not allege his private investigator fits within any of these categories and, therefore, it is implausible that he had any right to have mail from the investigator treated as legal mail.

Similarly, Patterson fails to plausibly allege Hill or anyone else at MCI retaliated against him for filing this lawsuit. In his first request for judicial notice, he offers the conclusory allegation that the Defendants were retaliating against him because, six months after he filed suit, mailroom staff members opened mail from this court outside of Patterson's presence and gave him poor and incomplete copies of the documents that had been mailed. (Doc. No. 14). In his second request for judicial notice, he claims he was forced to be married in a public ceremony at MCI when ODRC regulations call for a private ceremony, and that he was denied access to the courts because MCI's law library was closed from November 22, 2022 through November 26, 2022. (Doc. No. 17). He again offers the conclusory allegation that these things occurred in retaliation for Patterson's filing of this lawsuit. (*Id.* at 1).

"An inmate cannot immunize himself from adverse administrative action by prison officials merely by filing a grievance or a lawsuit and then claiming that everything that happens to him is retaliatory." *Spies v. Voinovich*, 48 F. App'x 520, 524-25 (6th Cir. 2002) (citation and internal quotation marks omitted). *See also Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) (affirming dismissal of plaintiff's retaliation claim as without merit where plaintiff's "claims rel[ied] solely on

the assumption that because he filed grievances against the defendants and some[]time later they took actions against him, they had improper motives").  Patterson has not supported his "allegations of retaliatory animus with 'specific, nonconclusory allegations . . . that could support a jury verdict at trial.'"  *LaFountain v. Mikkelsen*, 478 F. App'x 989, 992 (6th Cir. 2012) (quoting *Thaddeus-X*, 175 F.3d at 399-400) (alteration in *LaFountain*).  Therefore, he fails to state a plausible claim for relief.

### E.    FAILURE TO TRAIN

Patterson also fails to state a plausible failure-to-train claim.  Before a court may "find supervisory personnel liable[ for constitutional violations], a plaintiff must allege that the supervisors were somehow personally involved in the unconstitutional activity of a subordinate, … or at least acquiesced in the alleged unconstitutional activity of a subordinate."  *Wingo v. Tenn. Dep't of Corr.*, 499 F. App'x 453, 455 (6th Cir. 2012) (citing *Dunn v. Tennessee,* 697 F.2d 121, 128 (6th Cir. 1982), *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984)).  Patterson has not plausibly alleged any of the Defendants engaged in unconstitutional conduct.  Therefore, he cannot establish Chambers-Smith was personally involved or acquiesced in any unconstitutional activity.

### F.    MOTION FOR LEAVE TO AMEND

As I noted above, I have reviewed Patterson's claims and the State's motion in light of the factual allegations contained in Patterson's proposed amended complaint, because that document contains a much clearer description of the events underlying this litigation.  But, as I have discussed, the factual allegations in the proposed amended complaint do not "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true."  *Twombly*, 550 U.S. at 555.  I conclude the proposed amendments would be futile and deny Patterson's motion for leave to amend his complaint.  *See Foman*, 371 U.S. at 182; *Rose*, 203 F.3d at 420.

## V.    Conclusion

For the reasons stated above, I deny Patterson's motion for leave to amend his complaint, (Doc. No. 12), grant his motion for leave to file a sur-reply, (Doc. No. 15), and grant the State of Ohio's motion to dismiss Patterson's claims.  (Doc. No. 7).  Further, I certify, for the reasons set forth in this opinion and pursuant to § 1915, that an appeal from this decision could not be taken in good faith.  28 U.S.C. § 1915(a)(3).

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge